Tyhesha LEMON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0605–CR–375.

Court of Appeals of Indiana.

July 6, 2007.

Barbara J. Simmons, Oldenburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Tyhesha Lemon ("Lemon") was convicted in Marion Superior Court of Class A misdemeanor battery. She appeals and argues that the evidence presented is insufficient to support her battery conviction. Concluding that the evidence is insufficient to support Lemon's conviction, we reverse.

### Facts and Procedural History[1]

On the afternoon of February 13, 2006, Lemon, accompanied by her son and a friend, went to the parking lot of Handleman Company in Marion County to place a valentine card on the windshield of a Handleman employee, Ronald Walls ("Walls"). At the time, Lemon was a former girlfriend of Walls. While returning from Lunch, Walls saw Lemon and her friend in the parking lot. Lemon threatened to vandalize Walls's vehicle. Walls proceeded to the Handleman building and spoke to Handleman's Chief Security Officer, Jeffrey Mishler ("Mishler") about the situation. Mishler is a private security guard and is not a law enforcement officer. Walls and Mishler proceeded to walk outside to the parking lot and found Lemon kneeling down near the rear tire on the driver's side of Walls's vehicle.

After Mishler observed Lemon in the Handleman parking lot, he issued a verbal challenge to Lemon and tried to determine what she was doing. In response to Mishler's challenge, Lemon stood up and started to back away from the vehicle with her hands in her pockets. Lemon did not vandalize or otherwise damage the vehicle. Mishler told Lemon that she was trespassing. Thereupon, Lemon continued to back away, and became argumentative, but did not verbally refuse to leave.

When Lemon did not leave instantly, Mishler immediately approached Lemon and attempted to put her in a transport hold to gain control of her. He stated that she was being arrested for trespass. Mishler took hold of Lemon in order to handcuff her. Lemon struggled in an attempt to resist being handcuffed. Mishler attempted to place Lemon over the trunk of a car, but had to force her to the ground to gain physical control. During the struggle, a cut Mishler had received on his hand a few days earlier reopened and began to bleed. According to the testimony at trial, the cut on Mishler's hand may have been opened during the struggle by one of Lemon's fingernails or by the handcuffs scratching his hand.

After Lemon was handcuffed, Mishler took Lemon inside the Handleman building to the security office. Lemon continued to struggle on the way to the office.

---

1. We heard oral argument on May 3, 2007, at Fairfield High School in Goshen. We thank the faculty, staff, and students for their hospitality and counsel for their able presentations.

Once inside the security office, Mishler tried to place Lemon over a desk in an attempt to control her, but Lemon continued to struggle and was forced to the floor. While being forced to the floor by Mishler, Lemon sustained a cut lip.

Officers from the Marion County Sheriff's Department arrived at the scene and found Lemon lying on the floor inside the security booth with her hands handcuffed behind her back. According to these officers, Lemon cooperated with them as they arrested her for battery, disorderly conduct, and vandalism, but not for trespass.

The State charged Lemon with Class A misdemeanor battery, Class A misdemeanor criminal mischief, and Class B misdemeanor disorderly conduct. The State dismissed the criminal mischief charge prior to trial. During a bench trial on March 9, 2006, and following the presentation of the State's evidence, the trial court found Lemon not guilty of disorderly conduct. Lemon also moved to dismiss the battery charge, arguing that Mishler did not have the authority to arrest Lemon as he was not a law enforcement officer and Lemon did not commit a felony in his presence. The trial court took the motion under advisement.

On April 6, 2006, the trial court determined that Lemon committed a breach of the peace, thus providing Mishler with the right to hold Lemon until officers arrived. Upon that determination the trial court found Lemon guilty of Class A misdemeanor battery. Lemon was then sentenced to sixty days, with fifty-two days suspended. Additional facts will be provided as necessary.

## Standard of Review

Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028 (Ind.Ct.App.2002). We only consider the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Id.* "Where there is substantial evidence of probative value to support the judgment, it will not be disturbed." *Armour v. State*, 762 N.E.2d 208, 215 (Ind.Ct.App.2002), *trans. denied.* "The conviction will be affirmed unless we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." *Norris v. State*, 755 N.E.2d 190, 192 (Ind.Ct. App.2001), *trans. denied.*

## Discussion and Decision

Lemon argues that the evidence presented was insufficient to support her battery conviction. To convict Lemon of Class A misdemeanor battery, the State was required to prove that Lemon "knowingly or intentionally touch[ed] another person in a rude, insolent, or angry manner" and that the touching resulted "in bodily injury to any other person." Ind. Code § 35–42–2–1(a)(1)(A) (2004).

Specifically, Lemon contends that any injury sustained by Mishler was a result of his unreasonable and unlawful use of force while attempting to arrest her. Neither party disputes that Mishler's actions constituted an arrest. The issue here is whether Mishler's actions constituted a *lawful* arrest. Both parties also concede that Mishler has no law enforcement powers above and beyond those of a normal citizen.

### I. Unlawful Citizen's Arrest

The State argues that Mishler made a valid citizen's arrest pursuant to Indiana Code section 35–33–1–4, which provides in pertinent part:

(a) Any person may arrest any other person if:

(1) the other person committed a felony in his presence;

(2) a felony has been committed and he has probable cause to believe that the other person has committed that felony; or

(3) *a misdemeanor involving a breach of peace* is being committed in his presence and the arrest is necessary to prevent the continuance of the breach of peace.

(b) A person making an arrest under this section shall, as soon as practical, notify a law enforcement officer and deliver custody of the person arrested to a law enforcement officer.

Ind.Code § 35–33–1–4 (1998) (emphasis added).

The record conclusively shows that Mishler approached Lemon and informed her that he was arresting her for trespass. Trespass is a Class A misdemeanor. *See* Ind.Code § 35–43–2–2 (2004). Therefore, at least initially, in order to determine whether the citizen's arrest effected by Mishler was lawful, we must consider whether Lemon's actions immediately prior to the arrest constituted a breach of the peace.

■ "A breach of the peace includes all violations of public peace, order or decorum." *State v. Hart,* 669 N.E.2d 762, 764 (Ind.Ct.App.1996) (*citing Census Fed. Credit Union v. Wann,* 403 N.E.2d 348, 350 (Ind.Ct.App.1980)). "It is a violation or disturbance of the public tranquility or order and includes breaking or disturbing the public peace by any riotous, forceful, or unlawful proceedings." *Id.* "Thus, a breach of the peace may involve other offenses." *Id.*

Our supreme court has stated that violence, either actual or threatened, is an essential element of breaching the peace. *Price v. State,* 622 N.E.2d 954, 960 n. 6 (Ind.1993).[2] *See also Higgins v. State,* 7 Ind. 549 (1856) (holding that a person having possessory title to land who enters by force and turns out a person who has naked possession only may be indicted for breaching the peace); *State v. Hart,* 669 N.E.2d 762 (Ind.Ct.App.1996) (holding that a person who operates a motor vehicle while intoxicated commits a breach of the peace); *Nicholson's Mobile Home Sales, Inc. v. Schramm,* 164 Ind.App. 598, 330 N.E.2d 785 (1975) (holding that assault and battery by a creditor who is recovering property constitutes a breach of the peace). Yet, as our supreme court has not specifically elaborated upon what actions would constitute violence sufficient to create a breach of the peace, we are left to do so with reference to the facts before us.

■ Here, Mishler confronted Lemon in the parking lot while she knelt next to Walls's vehicle. Mishler issued a verbal challenge to Lemon, and Lemon became argumentative and backed away from Walls's vehicle. Nothing in the record indicates that Lemon had engaged in or threatened any acts of violence toward Mishler's person or to the person of anyone else at the scene. All that the record before us establishes is that Lemon left a valentine card on Walls's vehicle and was kneeling by a rear tire of the vehicle when confronted by Mishler.

Despite this lack of actual violence or imminent threat of violence, and without

---

**2.** In that case, the defendant was charged with disorderly conduct, not with a breach of the peace. *Id.* at 957. The Indiana disorderly conduct statute includes common law breach of the peace language, *see* Ind.Code § 35–45–1–3(a) (2004) (engaging in fighting or tumultuous conduct, unreasonable noise, and disruption of lawful assembly), but the *Price* court declined to recognize the disorderly conduct statute as a breach of the peace statute. *Id.* at 960 n. 6.

allowing Lemon a reasonable period of time to leave the premises of her own volition, Mishler immediately approached Lemon, grabbed her, and wrestled with her in order to place her in a transport hold. Lemon resisted Mishler's unilateral use of force. Thus, Lemon and Mishler engaged in a physical altercation only *after* Mishler grabbed Lemon. There was no imminent threat of or actual use of violence by Lemon until Mishler initiated physical contact with her. Without any imminent threat of or actual violence, Lemon's failure to immediately leave the parking lot, in and of itself, was not a breach of the peace.

Still, the State argues that Lemon's threat to vandalize Walls's vehicle was conduct that constituted a breach of the peace. We are aware of no case in Indiana or any other jurisdiction that has held that the mere threat to vandalize personal property, without more, constitutes a breach of the peace.

■ In this regard, the Restatement (Second) of Torts section concerning breaches of the peace provides some guidance. The comments to that section of the Restatement provide in part that the "use of force, or the threat of an *immediate* use of force, toward the person or land or chattels of another which constitutes a crime is a breach of the peace." Restatement (Second) of Torts § 116 cmt. a (1965) (emphasis added). Therefore, if a threat of use of force against property is to constitute a breach of the peace, that threat must be *immediate*. This is in accord with our supreme court's most recent pronouncement in *Price*.

In the present case, there is no question that Lemon did not vandalize or otherwise harm Walls's vehicle. Until she was grabbed by Mishler, Lemon used no force against him or against any property he had the authority to protect. While Lem-

on had threatened to vandalize the vehicle, there is no indication that there was any threat of an *immediate* use of force by Lemon which Mishler had to intercept to prevent.

When Mishler discovered Lemon by Walls's vehicle, he instructed Lemon to back away from the vehicle, and she complied. Lemon did not repeat her threat or otherwise indicate that she intended to use force against Mishler, Walls, or Walls's vehicle. Under the facts and circumstances contained in the record before us, there was no actual force or threat of an immediate use of force by Lemon; therefore, no breach of the peace occurred. Without a breach of the peace, Mishler had no authority under Indiana Code section 35–33–1–4 to effect a valid citizen's arrest for an alleged misdemeanor trespass, and such an arrest was unlawful. *See also Golibart v. Sullivan*, 30 Ind.App. 428, 66 N.E. 188 (1903) (a private citizen may not seize, bind, and forcibly confine a person she discovers committing a misdemeanor, if the person at once discontinues the misdemeanor and attempts flight).

■ Finally, the State contends that Lemon could not resist Mishler's arrest, even if it was an unlawful one. The State argues that Mishler was engaged in his duties as a security officer and was dressed in a security guard uniform, giving him the authority to protect the private property in his charge. The State attempts to rely upon a well-established line of Indiana decisions overturning the former common law rule that permitted an individual to resist an unlawful arrest with reasonable force. *See Heichelbech v. State*, 258 Ind. 334, 281 N.E.2d 102 (1972); *State v. Howell*, 782 N.E.2d 1066, 1067 (Ind.Ct.App.2003); *Alspach v. State*, 755 N.E.2d 209, 211 (Ind.Ct.App.2001), *trans. denied*; *Casselman v. State*, 472 N.E.2d 1310 (Ind.Ct.App.1985); *Fields v. State*,

178 Ind.App. 350, 382 N.E.2d 972, 975–76 (1978); *Williams v. State*, 160 Ind.App. 294, 311 N.E.2d 619 (1974).

■ However, the State's reliance on this line of decisions is misplaced at best. These cases follow the modern view that "a private citizen may not use force or resist peaceful arrest *by one he knows or has good reason to believe is an authorized officer performing his duties,* regardless of whether the arrest is illegal in the circumstances of the occasion." *Fields,* 382 N.E.2d at 977 (emphasis added). "[M]erely working as a private security guard does not vest that person with the auspices of being a public servant and a law enforcement officer." *Rogers v. State,* 741 N.E.2d 395, 398 (Ind.Ct.App.2000), *trans. denied.* Clearly, Mishler was not a law enforcement officer acting under color of law.

## II. Use of Reasonable Force

■ Indiana Code section 35–41–3–2 authorizes a private individual, like Mishler in this case, to use:

> reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.... With respect to property other than a dwelling, curtilage, or occupied motor vehicle, a person is justified in using reasonable force against another person if the person reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass on or criminal interference with property ... belonging to a person whose property the person has authority to protect.

Ind.Code § 35–41–3–2(a), (c). This statute does not even require a breach of the peace by the alleged trespasser, as is required by Indiana Code section 35–33–1–4(a).

■ It is our duty to harmonize statutes such as these when they apparently conflict, *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005), and we believe that the common law requirement of actual violence or the imminent threat of actual violence toward person or property best does so. We believe that reasonable force may be used and/or a citizen's arrest may be properly effectuated regarding misdemeanor conduct under Indiana Code sections 35–33–1–4(a) and 35–41–3–2(a) and (c) only when that conduct amounts to actual violence or the imminent threat of actual violence toward person or property. Without such a requirement, the reasonable expectations of law-abiding citizens in a civil society will be thwarted by the likelihood of misguided, vigilante notions of justice by private security guards or other individual citizens.

## III. Self Defense

■ For its last argument, the State claims that Lemon had no right to resist Mishler's unlawful arrest because, as a trespasser, she was not in a place where she had a right to be.[3] Initially, we note that Lemon was not arrested by Indianapolis Police for trespass, nor was she charged with or tried for trespass. We believe that the element of communication of denial of entry or request to leave necessarily implies a reasonable period of time for the person receiving that communication to leave of her/his own volition. Mishler did not give Lemon such a reason-

---

3. A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. *E.g. Henson v. State*, 786 N.E.2d 274, 277 (Ind.2003).

able period of time to comply, and therefore, in our view, no trespass occurred.[4]

## Conclusion

■ The simple act of trespass, without the threat of imminent violence or destruction of property, or actual violence or destruction of property on the part of the trespasser, does not sanction the use of unreasonable force by a landowner or his agent to terminate the trespass. Furthermore, an alleged trespasser does not give up her/his common law and statutory right to resist the use of unreasonable force by a landowner or her/his agent. In the case before us, Lemon's identity was well known and a simple 911 call or subsequent complaint filed with the prosecutor would have been the appropriate and lawful response to Lemon's conduct.

Under these facts and circumstances, Lemon was justified in using reasonable force to resist Mishler's unlawful and unreasonable use of force, and the evidence presented was not sufficient to support her conviction of Class A misdemeanor battery.

Reversed.

BARNES, J., and CRONE, J., concur.

J.B., Appellant–Defendant,

v.

---

4. While Indiana has not yet addressed self-defense by an alleged trespasser, other states have. *See People v. Toler*, 9 P.3d 341, 352 (Colo.2000) ("A person who is not where he has a right to be in many instances retains the privilege to use force in self-defense irrespective of his status as a trespasser."); *State v. Southworth*, 132 N.M. 615, 52 P.3d 987 (Ct. App.2002) (holding that additional jury instruction required to delineate the circumstances under which a trespasser has a right to "stand his ground"); *Womack v. State*, 36 Okla.Crim. 44, 253 P. 1027 (1926) ("even a trespasser ... where means of retreat are impracticable, has a right within reasonable bounds to repel an apparent dangerous attack in his necessary self-defense"); *People v. Hecker*, 109 Cal. 451, 42 P. 307, 312 (1895) ("Where one is the first wrongdoer, but his unlawful act is not felonious, as ... a mere trespass upon his property, even though forcible, and this unlawful act is met by a counter assault of a deadly character, the right of self[-]defense to the first wrongdoer is not lost.").